In re CONDEMNATION OF .036 ACRES, MORE OR LESS, OF LAND OWNED BY WEXFORD PLAZA ASSOCIATES, a Partnership With Graham Realty Co. as General Partner and/or William L. Bauerle, Jr., et ux. and/or William L. Bauerle, et ux., and Located Between Booker Drive (A Public Road Located in the Township of Pine, Allegheny County, Pennsylvania) and Lot No. 7 of the Wexford Plan Subdivision No. 1 (Recorded in P.B.V. 176, Pages 8–11) by the Township of Pine for the Opening and Construction of a Public Road.

Appeal of TOWNSHIP OF PINE, ALLEGHENY COUNTY, Pennsylvania, William L. Bauerle and Gita K. Bauerle.

Commonwealth Court of Pennsylvania.

Argued March 12, 1996.

Decided April 18, 1996.

---

Samuel P. Kamin, for Appellants.

Gary J. Gushard, for Appellee, Township of Pine.

Before DOYLE and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

William L. Bauerle, Jr. and his wife, Gita K. Bauerle, (Condemnees) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) overruling both Condemnees' preliminary objections and their amended preliminary objections to a declaration of taking filed by the Township of Pine (Township) condemning property owned by Condemnees.

On December 30, 1994, the Township, a home rule municipality in Allegheny County,

filed a declaration of taking as authorized by Township Resolution No. 470, condemning less than 600 square feet of a 1.8 acre parcel of property owned by Condemnees.[1] (R.R. at 5a–15a, 34a, 482a.) The property, on which condemnees operate a farm and garden center, (R.R. at 581a), is located at the intersection of State Road 19 and Booker Drive, an existing public road in the Township. The purpose of the condemnation was to acquire land necessary to open and construct a new public road (Wexford Plaza Drive) to connect Booker Drive to the Wexford Plaza Shopping Center, a strip mall owned by Wexford Plaza Associates. The Township offered Condemnees $1,000 as payment for the property, which Condemnees rejected.

On January 31, 1995, Condemnees filed preliminary objections to the condemnation,[2] which were followed by a series of responsive pleadings.[3] Then, in June 1995, five months after their original preliminary objections, Condemnees filed amended preliminary objections without seeking leave of court. In their amended preliminary objections, Condemnees allege for the first time that the Township's condemnation was void *ab initio.* Condemnees maintain that, because the property in question qualifies as agricultural land,[4] (R.R. at 584a), the Township's condemnation violates section 306 of the Administrative Code of 1929 (Act 1979–100),[5] 71 P.S. § 106, which requires prior approval for the condemnation from the Agricultural Lands Condemnation Approval Board (Agricultural Board).[6] (R.R. at 488a–91a.) The Township and Wexford Plaza Associates both filed preliminary objections to Condemnees' amended preliminary objections, arguing that the amended preliminary objections should be

---

1. Although the Township is a home rule municipality, for purposes of condemnation, the Township follows the provisions of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–67201. (R.R. at 114a–15a.)

2. In these original preliminary objections, Condemnees challenge the declaration of taking on grounds that it was authorized by resolution rather than by ordinance, as required by relevant portions of the Second Class Township Code. These preliminary objections, *inter alia,* also claim that the taking was done for private, rather than public, purposes and that the new road does not conform to Commonwealth standards. (R.R. at 21a–31a.)

3. In March 1995, the Township and Wexford Plaza Associates both filed answers to Condemnees' preliminary objections. (R.R. at 32a–40a; 40a–44a.) In April, Condemnees filed preliminary objections to the answer to the preliminary objections, questioning the standing of Wexford Plaza Associates. (R.R. at 45a–53a.) Finally, Wexford Plaza Associates filed an answer to the preliminary objections to the answer to the preliminary objections. (R.R. at 54a–58a.) In the order on appeal here, the trial court overruled the preliminary objections that Condemnees filed in April 1995.

4. Condemnees maintain that their land meets the criteria set forth in section 3 of the Pennsylvania Farmland and Forest Land Assessment Act of 1974, Act of December 19, 1974, P.L. 973, *as amended,* 72 P.S. § 5490.3, which provides in pertinent part:

   (a) For general property tax purposes, the value of land which is presently devoted to agricultural use, ... shall on application of the owner and approval thereof as hereinafter provided be that value which such land has for its particular use if it also meets the following conditions:
   (1) Land presently devoted to agricultural use: Such land was devoted to agricultural use the preceding three years and is not less than ten contiguous acres in area or has an anticipated gross income of two thousand dollars ($2,000).

5. Section 306 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* added by Section 1 of the Act of December 7, 1979, P.L. 478, 71 P.S. § 106.

6. Act 1979–100, 71 P.S. § 106, created the Agricultural Board and established its duties and powers, including the following pertinent provisions:

   (b) Before condemning for any of the purposes set forth in subsection (d) any agricultural lands, as classified by the Agricultural Soil Conservation Service of the United States Department of Agriculture, which lands are being used for productive agricultural purposes, ... the Commonwealth of Pennsylvania and any of its political subdivisions, agencies or authorities shall request the Agricultural Lands Condemnation Approval Board to determine that there is no reasonable and prudent alternative to the utilization of such lands for the project.
   . . . .
   (d) The board shall have jurisdiction over condemnation for the following purposes:
   (1) Highway purposes, but not including activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curbs or reconstruction.

dismissed as untimely. (R.R. at 540a–43a; 551a–54a.)

Following a hearing on the matter, the trial court overruled Condemnees' initial preliminary objections on substantive grounds [7] and overruled the amended preliminary objections as being untimely filed.

■ Condemnees raise three issues on appeal.[8] First, Condemnees argue that the trial court erred in failing to hold that the Township lacked jurisdiction to condemn Condemnees' property because the Township failed to comply with Act 1979–100, 71 P.S. § 106, which requires the Township to request approval of the condemnation from the Agricultural Board. Condemnees also contend that the declaration of taking was fatally defective because the Township authorized it by resolution rather than by ordinance. Finally, Condemnees assert that the Township acted in bad faith in condemning the property because (a) the condemnation was excessive, (b) the new road did not comply with legislative and municipal standards, and (c) the taking was for private purposes.

## I.

■ Initially, Condemnees maintain that, because the Township failed to request approval from the Agricultural Board before proceeding with the condemnation, the taking is void *ab initio* as a violation of Act 1979–100, 71 P.S. § 106. In their brief, Condemnees claim to have properly raised this issue, (Condemnees' brief at 10); however, they did not include it in their original preliminary objections; instead, Condemnees raised this argument before the trial court only by way of the amended preliminary objections filed five months later.

■ Preliminary objections in the context of eminent domain actions serve a different purpose than preliminary objections filed in other civil actions. *North Penn Water Authority v. A Certain Parcel of Land,* 168 Pa.Cmwlth. 477, 650 A.2d 1197 (1994). In eminent domain cases, preliminary objections are intended as a procedure to resolve *expeditiously* the factual and legal challenges to the declaration of taking before the parties proceed to determine damages. *Id.* Thus, with regard to preliminary objections, section 406 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–406 (emphasis added), provides in pertinent part:

(a) *Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.* The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. *Failure to raise these matters by preliminary objections shall constitute a waiver thereof.*

. . . .

(c) *All preliminary objections shall be raised at one time and in one pleading.* They may be inconsistent.

. . . .

(e) *The court shall determine promptly all preliminary objections* and make such preliminary and final orders and decrees as justice shall require, including the revesting of title.

In light of these provisions, the trial court properly overruled Condemnees' amended preliminary objections. Here, Condemnees did not raise their amended preliminary objections within thirty days of the receipt of the condemnation notice and have provided

---

7. The trial court also determined that Condemnees waived many of their issues because the issues either were omitted from the preliminary objections and raised for the first time in briefs, or because, although timely raised in the preliminary objections, the issues were never briefed. (Trial court op. at 2; R.R. at 598a.)

8. In eminent domain cases, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *North Penn Water Authority v. A Certain Parcel of Land,* 168 Pa.Cmwlth. 477, 650 A.2d 1197 (1994).

no excuse for the late filing. Because Condemnees failed to raise the Township's violation of Act 1979–100 in their initial preliminary objections, raising the issue only in their untimely amended preliminary objections, they have waived it. 26 P.S. § 1–406(a); *Appeal of Edgewood Building Co.,* 43 Pa.Cmwlth. 911, 402 A.2d 276 (1979) (holding that where a condemnee provided no excuse for a late filing of preliminary objections and the condemnor bore no responsibility for the delay, refusal to allow a late filing is not an abuse of discretion).[9]

## II.

██ Next, Condemnees argue that the declaration of taking was invalid because it was authorized by resolution as opposed to being enacted by ordinance as required by the Second Class Township Code. We specifically rejected this argument in *Appeal of Heim,* 151 Pa.Cmwlth. 438, 617 A.2d 74 (1992), *appeal denied,* 535 Pa. 625, 629 A.2d 1385 (1993), relying on *Jordan Appeal,* 73 Pa.Cmwlth. 572, 459 A.2d 435 (1983).

In *Jordan Appeal,* we recognized that the opening of a street is not synonymous with the concept of the eminent domain taking by which the interest in the land for the street is acquired. Consequently, we concluded that, although section 1731 of the Borough Code[10] required the enactment of an ordinance for the *opening* of a street, a borough could authorize a declaration of *taking* by resolution.

We applied this rationale in *Appeal of Heim.* In that case, a second class township authorized a declaration of taking with a resolution, and the condemnees argued that the declaration of taking was invalid because it should have been based upon an ordinance. Analogizing *Jordan Appeal,* we noted that, although section 1101 of the Second Class Township Code, 53 P.S. § 66101, requires the enactment of an ordinance for the *laying out* and *opening* of streets, that Code does not specify what procedure should be used to authorize the *taking* of land for a street; thus, we held that a taking could be authorized by resolution. Because the Township's Resolution No. 470 authorizes the *taking* of Condemnees' property, the resolution is sufficient for that purpose.[11] *Appeal of Heim.*

## III.

Finally, Condemnees assert that the Township acted in bad faith in condemning the subject property.[12] First, Condemnees claim that the Township condemned a greater amount of property than was reasonably necessary for the new road because, if the Township had elected an alternative road plan, it would not have been necessary to take Condemnees' property. Further, Condemnees argue that the Township acted in bad faith when it approved the proposed road because the road does not comply with legislative and Township standards in that it will encroach upon the remaining portion of Condemnees' property, will have no berm, will be too narrow and will have unsafe sight angles.

**9.** Moreover, even if Condemnees had raised this issue in a timely fashion, the record contains no evidence to suggest that the Agricultural Board has jurisdiction. Although the record contains a letter from the Pennsylvania Department of Agriculture regarding William Bauerle's license for his business, (R.R. at 585a), we can find nothing in the record to indicate that the property in question was ever classified as agricultural land by the Agricultural Soil Conservation Service of the United States Department of Agriculture, as required by subsection (b) of Act 1979–100. Further, although Condemnees claim that their property is governed by Act 1979–100 because it meets the criteria set forth in 72 P.S. § 5490.3, we note that that statute only relates to the classification of property for agricultural use with regard to the land's value for general property tax purposes.

**10.** Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46731.

**11.** Moreover, the Township later ratified its intent to condemn the property through Ordinance 230, which also authorized the taking. (Trial Court op. at 3.)

**12.** In reviewing a municipality's decision to condemn property and the extent of the taking, the question is whether the municipality is guilty of fraud, bad faith or abuse of discretion. There is a strong presumption that the municipality has acted properly and the burden is heavy upon one attempting to show an abuse of discretion. *Appeal of Heim.*

 Initially, we point out that Condemnees failed to raise their excess condemnation objection in the original preliminary objections and, therefore, have waived the issue. 26 P.S. § 1–406(a). As to this objection, however, we note that site selection for the road is exclusively within the power of the Township as condemnor; [13] moreover, neither the court nor Condemnees are permitted to substitute their discretion for that of the Township for purposes of questioning the design of the proposed roadway. *In re Township of Heidelberg For Footpath*, 58 Pa.Cmwlth. 321, 428 A.2d 282 (1981); *Swartz v. Pittsburgh Public Parking Authority*, 63 Pa.Cmwlth. 434, 439 A.2d 1254 (1981).

 Further, with regard to Condemnees' claim that the proposed road violates both Township standards, (R.R. at 482a), and provisions of the Second Class Township Code, the Township correctly points out that its condemnation of the land, by itself, cannot arguably violate these provisions. As noted in *Appeal of Heim*, Condemnees' proper course is to raise these issues as challenges to the Township's ordinance *opening* the road.

 Condemnees also argue that the condemnation was for private, rather than public, purposes because it was solely for the benefit of Wexford Plaza Associates. However, in *Appeal of Heim*, we held that a taking does not lose its public character merely because there may exist in the operation some feature of private gain; if the public good is enhanced, it is immaterial that a private interest may also benefit. Here, the testimony indicated that the proposed road will be available to the public, will benefit a number of other properties in the area beyond the Wexford Plaza Shopping Center,

and will enhance public safety. (*See, e.g.*, R.R. at 207a–13a, 228a–32a, 239a, 465a–67a.) [14]

For these reasons, we affirm the order of the trial court overruling both Condemnees' preliminary objections and their amended preliminary objections.

### ORDER

AND NOW, this 18th day of April, 1996, the order of the Court of Common Pleas of Allegheny County, dated July 11, 1995, is hereby affirmed.

---

13. Moreover, a review of the record here reveals substantial evidence to support the trial court's finding that the condemnation took the least feasible amount of property from Condemnees. (R.R. at 183a–84a; 239a.)

14. In support of their argument that the condemnation was solely for the benefit of Wexford Plaza Associates, Condemnees also point to an agreement between the Township and the Wexford Plaza Co., providing that Wexford Plaza Co. would pay for a large portion of the road design and construction costs as well as litigation ex-

penses. The existence of this agreement does not alter our position. In fact, like the Township here, the township in *Appeal of Heim* entered into an agreement with the developer whereby the developer would assume much of the costs incident to the condemnation of the property. However, we did not determine that such an agreement cast doubt on the validity of the taking; on the contrary, we concluded that "such an agreement is quite logical in that it benefits the taxpayers of the municipality by shifting the costs onto the developer." *Id.*, 617 A.2d at 79.